UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CLARENCE ROGERS,,
    Plaintiff,

vs.                                                      05-1353

DONALD HULICK, et. al.,
    Defendants.

### SUPPLEMENTAL SUMMARY JUDGEMENT ORDER

This cause is before the court for further consideration of the plaintiff's retaliation claim.

### I. BACKGROUND

The plaintiff originally filed his complaint pursuant to 42 U.S.C.§1983 against 15 defendants at Hill Correctional Center including Warden Donald Hulick; Correctional Officers Cornealious Sanders, Ed Anderson, James Critzer, Ronald Turnquist, Wayne Steele, James Carothers, Tammy Bennett, Robert Shisler, Steven Nott and Rod Melton; Administrative Review Board Member Melody Ford and Brian Fairchild; Illinois Department of Corrections Deputy Director Barbara Hurt and Director Roger Walker.

On December 7, 2005, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff had stated an Eighth Amendment claim, a First Amendment claim and a Due Process claim. *See* December 7, 2005 Court Order.

On August 8, 2007, the court granted in part and denied in part the defendants' motion for summary judgement. The court found the plaintiff had the following surviving claims;

1) Defendants Anderson, Critser, Sanders, Steele and Turnquist violated the plaintiff's Eighth Amendment rights when they failed to protect the plaintiff from an inmate assault; and,
2) the named defendants violated the plaintiff's First Amendment rights when they retaliated against him for filing grievances and complaining about the assault.

Specifically, the plaintiff alleges that he told the identified defendants that he was in danger and needed to move to a different cell. No action was taken and the plaintiff says he was attacked by his cell mate later on the same day. The plaintiff then says the defendants retaliated against him for his grievance and letters concerning the assault.

The court noted in its summary judgement order that the defendants' motions left many

1

unanswered questions concerning the potential retaliation claim. *See* August 8, 2007 Court Order, p. 5.  It was not even clear what retaliation claims the plaintiff was stating against each of the defendants or if he had retaliation claims against all 15 named defendants.

Therefore, the court ordered both parties to provide further briefing on this claim and answer specific question propounded by the court to clarify the claim and determine whether the issue was ready for trial.  The plaintiff was asked to specifically state: 1) which defendants retaliated against him; 2) how each defendant retaliated against him; 3) when he filed grievances or sent letters concerning the assault; 4) any evidence that the defendant knew about his grievances or letters, and 5) any discipline received for refusing housing.   The plaintiff was also asked to provide copies of any grievances or letters.

The defendants were ordered to respond to the plaintiff's claims and also provide information concerning: 1) the results of the disciplinary hearing; 2) a copy of the plaintiff's grievance or grievances; 3) a chronology of events; 4) the defendants knowledge of the grievance or grievances, and 5) any other information relevant to the plaintiff's retaliation claim.

The parties have now responded.  Since the briefs were requested to more thoroughly consider the summary judgment motion, the court will consider the retaliation claim pursuant to the summary judgement standard.

## II. FACTS

Based on information provided by both parties, the following chronology has been established:

    1/10/05   plaintiff complains to defendants about his safety concerns
    1/10/05   (9:02 a.m.) plaintiff says he is attacked by his cell mate
    1/10/05   (10:30) Def. Critser writes/signs an incident report
    1/10/05   plaintiff files an emergency grievance concerning assault
    1/14/05   Warden Hulick states the grievance does not qualify as an "emergency," and the plaintiff must submit the grievance in the normal manner.
    1/24/08   The plaintiff's grievance is denied by Grievance Officer Shisler who states he reviewed the incident with Officer Critser and Officer Anderson.
(At some time during this period, the plaintiff writes a letter to the Governor which is forwarded to the Warden's office and Officer Bennett is asked to interview the plaintiff in regards to his safety concerns. )
    3/3/05   Def. Bennett interviews plaintiff, writes disciplinary report
    3/15/05   Disciplinary hearing held.

The court also notes that the defendants stated in their first motion for summary judgement that there is no protective custody at Hill Correctional Center.  Therefore, an inmate

who believes his cell mate is a threat has only two options: 1) the inmate may refuse his current housing assignment: or 2) the inmate may request to be placed in segregation under investigative status.

If the inmate chooses the first option and refuses housing, he will be moved to a different location and issued a disciplinary ticket. If the inmate's claims about his cell mate can be substantiated, the ticket will be expunged. If not, the inmate will be disciplined. (Def. Memo, Bennett Aff,)

If an inmate chooses the second option and asks to be put in segregation under investigative status, the Internal Affairs division will look into the inmate's claims concerning his cell mate. If the claim is substantiated, the inmate will be recommended for transfer to another facility. If the allegation is not substantiated, a disciplinary report may be issued. (Def. Memo, Bennett Aff,)

Defendant Tammy Bennett is assigned to the Internal Affairs Division. Bennett says inmates frequently complain about their cell mates and request to change their cell assignments. Some offenders make false claims to obtain a different assignment. Bennett says allowing excessive inmate movement would disrupt the safety and security of Hill Correctional Center. Defendant Bennett says the purpose of the policy at Hill Correctional Center is to make sure that every inmate has the ability to get out of a dangerous situation.

> Offenders may not be able to ensure removal from their housing assignment unless they refuse housing. Although this means that an offender may not be able to escape a dangerous housing situation without receiving a disciplinary report, this policy is necessary to preserve the safety and security of the institution.(Def. Memo, Bennett Aff, p. 2).

### III.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.

3

*Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

The court asked the plaintiff to identify which specific defendants retaliated against him. The plaintiff has now responded that only 7 of the 15 named defendants were involved in this claim including Defendant Critser, Anderson, Bennett, Carothers, Sanders, Nott and Hulick. Therefore, the court will dismiss Defendants Turnquist, Steele, Shisler, Melton, Ford, Fairchild, Hurt and Walker from the second count since the plaintiff says he has no retaliation claim against these individuals. In addition, the court will dismiss Defendants Shisler, Melton, Ford, Fairchild, Hurt and Walker from this lawsuit since the plaintiff has no surviving claims against these individuals.

As for the remaining defendants, the plaintiff alleges they retaliated against him in response to his complaints concerning their failure to protect him from an inmate attack. The plaintiff says he filed a grievance and wrote numerous letters. The plaintiff also says he made oral complaints, but does not specifically point to any verbal complaints beyond his initial requests to be moved to a new cell shortly before the attack.

As the court has previously explained, while it's easy to state a retaliation claim, the burden of proving such a claim is heavy. *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996); *see also Cole v. Litscher,* 2005 WL 627791 (W.D. Wis. March 15, 2005) "Prisoners are entitled to utilize available grievance procedures without threat of recrimination," and if a prison official retaliates, he violates the inmate's First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). To prove his claim, the plaintiff must prove that constitutionally protected conduct, such as filing a grievance, was a substantial or motivating factor in a defendant's actions. *Spiegla v Hull,* 371 F.d 928, 942-43 (7th Cir. 2004). Bald assertions that the defendants retaliated is not enough. *Benson v Cady,* 761 F.2d 335, 342 (7th Cir. 1985). Once the plaintiff

4

proves that an improper purpose was a motivating factor, the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct. *Spiegla,* 371 F.d at 943. Therefore, if a prison officer's actions are supported by a legitimate penological concern, the retaliation claim fails as a matter of law.

The plaintiff and defendants have provided the following information concerning the claims against the individual defendants:

A. DEFENDANTS CRITSER AND ANDERSON

The plaintiff says these defendants retaliated against him by providing false statements that the plaintiff's injuries on January 10, 2005 were self-inflicted. The plaintiff says the statements were made in retaliation for the plaintiff's grievance. In support of his claim, the plaintiff says the defendants claimed the plaintiff was not injured by his cell mate. Instead, the plaintiff says these defendants claimed to have witnessed the plaintiff injury himself. However, the defendants did not fill out an inmate injury report and did not refer the plaintiff to mental health workers based on his self-injury.

The defendants have provided a copy of an Incident Report written and signed by Defendant Critser on January 10, 2005 at 10:30 a.m. (Def. Brief, Ex. J). Critser says he was told by Officer Sanders that the plaintiff wanted to see him. When he went to the plaintiff's cell and asked what he wanted, the plaintiff replied, "can't you see I am bleeding." (Def. Brief, Ex. J). The officer says the plaintiff never told him that his room mate had hit him. An inmate housed directly across from the plaintiff stated that plaintiff had hit his own head on the door. Another inmate stated that some inmates were making fun of the plaintiff and that upset him. The inmate said he heard a "disruption" right before the plaintiff began asking for Defendant Critser. The plaintiff and his cell mate were taken to different cells and a nurse treated the plaintiff's cut. The officer says the plaintiff was taken to the Health Care Unit for further treatment.

Defendant Critser does not claim that he saw the plaintiff injure himself. The information came from another inmate. In addition, the statements could not have been retaliatory since the report was filed shortly after the incident and before the grievance was filed or investigated.

Defendant Anderson says he did not write any incident reports or other documentation concerning the January 10, 2005 incident, but does recall that other inmates in the unit did not support the plaintiff's version of events. (Def. Brief, Ex. C).

The plaintiff has failed to state a retaliation claim against either defendant. The plaintiff cannot demonstrate that his grievance could have been a motivating factor behind the defendants' statements. The officers based their statements on information from other inmates

5

received immediately after the alleged assault and before the grievance was investigated. The court will dismiss the plaintiff's retaliation claim against these two defendants.

The court notes the plaintiff also claims these defendants made the false statement that the plaintiff injured himself in an attempt to "cover-up" their own conduct when they failed to respond to the plaintiff's request to be moved to a different cell. If the plaintiff is now attempting to claim a conspiracy, it is too late. The plaintiff did not make this claim in his complaint. The claim was not identified in the court's merit review order, and the plaintiff did not file a motion to amend to clarify or add this claim.

B. DEFENDANT BENNETT

The plaintiff says Defendant Bennett retaliated against him by filing a false disciplinary report claiming that he had refused housing. The plaintiff says Bennett wrote the report because the plaintiff had sent a letter to the Governor's office complaining about the January 10, 2005 incident and because the plaintiff had filed a grievance concerning the assault. The plaintiff alleges that he never refused housing or disobeyed a direct order. The plaintiff further states that the defendant wrote the disciplinary ticket after he refused to drop his claim of assault against his room mate.

Defendant Bennett says she interviewed the plaintiff on March 3, 2005 about his allegations that he feared for his safety. Bennett says she was not aware of the plaintiff's grievance at the time of the interview. (Def. Brief, Ex. E). "To the best of my recollection, the interview was conducted at the request of Warden Hulick in response to a letter forwarded from the Governor's Office." (Def. Brief, Ex. E). Bennett says the plaintiff told her that he feared gang members might harm him and he stated that he would not go back into the general population. Therefore, the defendant says she wrote the disciplinary ticket

The defendants state that the plaintiff has failed to demonstrate that his constitutionally protected conduct was the substantial motivating factor behind Defendant Bennett's actions. First, they claim the letter to the Governor involved matters of personal, rather than public, concern and therefore was not protected speech. *See McElroy v. Lopac*, 403 F.3d 855, 858-59 (7th Cir.2005) (noting constitutionally protected activity must relate to a public concern) The plaintiff claims his letter addressed policy issues of public concern. Neither side has provided the court with a copy of the letter, so the court cannot address this issue.

Second, the defendants state that there is no evidence that Bennett knew about the plaintiff's grievance. The plaintiff claims his grievance was attached to the letter sent to the Governor which was in turn forwarded to the institution.

While it does appear that issuing a disciplinary ticket is the standard procedure when an inmate refuses housing, the plaintiff claims he never refused housing. In addition, the defendant

6

admits the reason she talked to the plaintiff was in response to his letter (and perhaps grievance) that was sent to the Governor.  There is a substantial dispute over the facts surrounding this claim and summary judgment is not appropriate.  The motion is therefore denied as to Defendant Bennett.

C. DEFENDANTS CAROTHERS AND SANDERS

The plaintiff says these defendants presided over the Adjustment Committee hearing on the disciplinary report.   The plaintiff says the defendants did not seriously consider his arguments, nor call his witnesses.  The plaintiff says the defendants actions were in retaliation for his grievance concerning the assault.

The defendants have provided a copy of the Adjustment Committee Report dated March 15, 2005.  The plaintiff told the committee that he never refused housing or refused general population.  The report also notes the committee found the plaintiff guilty based on his statement that he was attacked while in segregation and that he would not go back to general population from "this time forward." (Def. Brief, Ex. A).

There is no indication that any witnesses were requested for the hearing.  The court notes that the plaintiff did file a second grievance concerning the Adjustment Committee hearing.  In response to the plaintiff's claim that his witnesses were not called, Officer Haun responded that all witnesses are called if the witness slip is submitted in a timely manner. (Plain. Brief, Ex. D-8).  The plaintiff provides no evidence that he followed the appropriate procedures to request a witness, nor that he made a timely request.

Defendant Carothers says the punishment given to the plaintiff was the standard punishment for an inmate found guilty of the same offense. (Def. Memo, Ex. F)    Defendant Carothers also says he was not aware of any letter or grievance from the plaintiff prior to the hearing.  The defendant says he had "no official involvment in the offender grievance process" and would not typically have been notified of grievances that did not name him specifically. (Def. Memo, Ex. F).   Defendant Sanders also says he was not aware of the grievance or letter. (Def. Memo, Ex. I).

The plaintiff has failed to establish any evidence that theses defendants retaliated against him.  There is no evidence they knew of the plaintiff's prior grievance or letters.   The defendants found the plaintiff guilty based on the information presented to them.  While the plaintiff does not believe his claims were thoroughly investigated, there is no evidence the procedures followed did not meet minimum due process requirements. *See Wolff v. McDonnell*, 418 U.S. 529 (1974). There is no evidence the discipline imposed was out of the ordinary.  Even if Defendant Bennett wrote the ticket in retaliation, there is no evidence that either of these defendants were aware of this claim.   The motion for summary judgement is granted as to Defendants Carothers and Sanders.

D. DEFENDANT NOTT

The plaintiff says Defendant Nott retaliated against him by "approving defendant Bennett's recommendation to place the plaintiff in punitive segregation for the false disciplinary report written by defendant Bennett." (Comp., p. 11) The plaintiff also says this defendant was the Chief of Security and did not fully investigate his claims and provided false information to one of the plaintiff's friends about the incident.

Defendant Nott says he was not working on January 10, 2005, and has no personal knowledge of the events that occurred on that day. (Def. Brief, Ex. H).  The defendant says he has reviewed the disciplinary report issued by Defendant Bennett on March 8, 2005 accusing the plaintiff of refusing housing.  Nott says as Shift Supervisor and Reviewing Officer he did sign off on the plaintiff's temporary confinement.  He says this decision was based on Defendant Bennett's report.  Nott says, "I would have approved the temporary confinement of an offender under the same circumstances." (Def. Brief, Ex. H).

Defendant Nott also says that he does not believe he was aware of the plaintiff's letter or grievance.  "As a Correctional Major, I did not routinely become involved in the review or investigation of offender's grievances.  I would not typically become aware of a particular grievance unless it was directed toward myself and I was contacted for a response." (Def. Brief, Ex. H).

Again, the plaintiff has failed to provide any evidence that this defendants actions were motivated by his grievance.  The plaintiff has provided no evidence that this defendant was aware of the plaintiff's grievance or letters.   There is no evidence that the procedure followed by Officer Nott is different from the procedure followed in similar cases.  Again, even if Officer Bennett wrote the disciplinary report out of a retaliatory motive, there is no evidence Defendant Nott was aware of this claim.  "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996).  *See also Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). (the doctrine of *respondeat superior* (supervisor liability) does not apply to §1983 cases).   The motion for summary judgement on the retaliation claim against Defendant Nott is granted.

E. DEFENDANT HULICK

The plaintiff says this defendant retaliated against him by approving all disciplinary measures, signing off on the denial of his grievance, refusing to meet with the plaintiff personally and failing to investigate his claims.

Defendant Hulick says during the time frame of the complaint, he was the Warden at Hill Correctional Center. (Def. Brief, Ex. G)  Hulick says he does not recall the plaintiff nor the circumstances of his complaint.

> Due to the myriad of pressing issues I faced as Warden at Hill Correctional Center, I routinely delegated the authority to review items such as grievances and correspondence to administrative assistants or designees. (Def. Brief, Ex. G, p. 1)

The plaintiff originally filed his grievance concerning the assault as an emergency grievance.  Defendant Hulick says he did sign the grievance stating that it did not qualify as an emergency grievance requiring expedited review.   The plaintiff was directed to file his grievance using the standard procedures.   Defendant Hulick says he did not sign off on the final denial of the grievance.  Hulick says this was done by a designee. (Def. Brief, Ex. G).

The plaintiff has failed to establish that his grievance or his letter was the motivating factor in Hulick's decisions.  This defendant was not involved in the denial of his grievance or the approval of the disciplinary measures.  In addition, there is no evidence this defendant knew that his subordinates had retaliated against the plaintiff.  *See Duncan,* 644 F.2d at 655; *Vance,* 97 F.3d at 992; *Pacelli,* 972 F.2d at 877.  The motion for summary judgement is granted as to this defendant.

The court notes that the plaintiff claims the defendants did not provide a copy of the letter he sent to the Governor, nor did they provide copies of other memos or letters he wrote to various prison officials.  The plaintiff does not explain why he does not have his own copies of these documents.  In addition, while the plaintiff did file a motion to compel in this case, he did not state that he was missing these specific documents.

## V.  CONCLUSION

The defendants' motion for summary judgment on the retaliation claim is granted in part and denied in part.   The plaintiff has the following surviving claims:

> 1) Defendants Anderson, Critser, Sanders, Steele and Turnquist violated the plaintiff's Eighth Amendment rights when they failed to protect the plaintiff from an inmate assault; and,
> 2) Defendant Bennett violated the plaintiff's First Amendment rights when she retaliated against him for filing a grievance and writing a letter concerning the assault.

The claims are against the defendants in their individual capacities.  All other claims and defendants are dismissed.

**IT IS THEREFORE ORDERED that:**

1. The defendant's motion for summary judgement on the plaintiff's retaliation claim is granted in part and denied in part pursuant to Fed. R. Civ. P. 56. [d/e 55]   The clerk of the court is directed to enter judgment in favor of the following 9 defendants in accordance with this order: Defendants Donald Hulick,  James Carothers, Steven Nott, Robert Shisler, Rod Melton, Melody Ford, Brian Fairchild, Barbara Hurt and Roger Walker.  The parties are to bear their own costs.

2. The plaintiff has the following surviving claims against the 6 surviving defendants:

    a. Defendants Anderson, Critser, Sanders, Steele and Turnquist violated the plaintiff's Eighth Amendment rights when they failed to protect the plaintiff from an inmate assault; and,
    b. Defendant Bennett violated the plaintiff's First Amendment rights when she retaliated against him for filing a grievance and writing a letter concerning the   assault.

3. A final pretrial conference is scheduled for January 20, 2009 at 1:30 p.m. by personal appearance.  The parties are further directed to submit the proposed final pretrial order to the clerk of the court by January 16, 2009.

4. The proposed order must include (1) the name, prison number, and place of incarceration for each inmate to be called as a witness; 2) the name and place of employment for each Illinois Department of Corrections employee to be called as a witness; and 3) the names and addresses of any witnesses who are not inmates or IDOC employees for whom a party seeks a trial subpoena.  The party seeking the subpoena must provide the witness fee and mileage fee to such witness and is responsible for service of the subpoena under Fed. R. Civ. P. 45.

5. The parties are reminded that they must disclose expert witnesses and expert testimony pursuant to the requirements of Fed. R. Civ. P. 26(a)(2)(A)(c) at least 90 days before the trial date set forth below;

6. A jury trial is scheduled for February 2, 2009 at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference.  The Clerk is directed to issue appropriate process for the personal appearance of the plaintiff at

**the trial and the video appearance of the inmate witnesses listed in the final pretrial order who are not parties to this case and of those IDOC employees listed in the final pretrial order who will appear by video.**

7. **The plaintiff's motion for a pretrial conference is denied as moot. [d/e 91]**

Enter this 6th day of January, 2009.

                                                    **s\Harold A. Baker**
                                        _____
                                              HAROLD A. BAKER
                                     UNITED STATES DISTRICT JUDGE